## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

TERESA A. WILLIAMS,          )
                                )
           Plaintiff,        )
                                )
           v.                )          CAUSE NO. 2:22-CV-00027
                                )
KILOLO KIJAKAZI,         )
Acting Commissioner of the Social Security )
Administration,               )
                                )
           Defendant.      )

## <u>OPINION AND ORDER</u>

Teresa A. Williams appeals the denial of her application for Social Security disability benefits. She claims that the Administrative Law Judge committed four errors that require a reversal of her decision. [DE 18 at 8.] I will limit my discussion to the ALJ's RFC evaluation and compliance with 20 C.F.R. § 404.1520c during the assessment of opinion evidence because these two issues are decisive. [AR 43, 53.][1]. Because I find that the ALJ erred in determining the RFC and violated 20 C.F.R. § 404.1520c, I will reverse the ALJ's decision and remand on these grounds.

---

[1] The administrative record [AR] is found in the court record at docket entry 9, which is the first 1180 pages, and docket entry 16, which is pages 1181-1207. [DE 9, 16.] I will cite to its pages according to the Social Security Administration's Bates stamp numbers in the bottom right-hand corner of each page rather than the court's Electronic Case Filing page number.

## Background

Plaintiff Teresa Williams was born on April 24, 1969. [AR 362.] Williams suffers

from severe impairments of degenerative disc disease, inflammatory bowel disease,

obesity, anxiety, and depression. [AR 40.] Williams is 5′ 3″ and has consistently

weighed between 240 and 277 pounds with a body mass index (BMI) ranging from 43 to

49, which is considered "Level III" obesity. [AR 52.] Williams claims she can no longer

work because of an emergency right hemicolectomy that removed the right side of her

large intestine. [AR 73-74.] Williams claims this procedure resulted in bouts of nausea,

unpredictable diarrhea, irritable bowel syndrome (IBS), and difficulty concentrating. *Id.*

Williams takes medication to manage her nausea but claims it often makes her drowsy.

[AR 73-74, 86.] She also claims her diarrhea is unpredictable and sometimes prevents

her from reaching the restroom in time, especially if she is not near one. [AR 44, 74.] She

experiences this about twice a month, lasting up to two days. [AR 44.] According to

Williams, she avoids leaving her home during these times for fear of accidents. *Id.*

Williams also suffers from degenerative disc disease. [AR 45.] She states her disc

disease reduces her ability to walk more than half a block without experiencing pain.

[AR 44.] A cervical MRI shows multiple degenerative disc disease including: a

herniation at L4-L5; bulging disc at L5-S1, L1-L2, and L3-L4 levels; foraminal narrowing

bilaterally at L2-L3 and L3-L4 levels; and facet joint arthropathy. [AR 45.]

Lastly, she suffers from mental limitations leading to difficulty with memory,

lack of focus, and aggression toward co-workers. During her appointments with Dr.

Pamela Tran-Ong (one of her previous psychiatrists), Williams reported suffering from

2

difficulty focusing, mood swings, depressed mood, manic episodes, racing thoughts, rapid cycling, insomnia, irritability, frustration, anxiety attacks, angry outbursts, feelings of hopelessness and helplessness, paranoia, auditory, flashbacks, and problems dealing with others. [AR 882, 884, 912, 926, 1020, 1039.] She scored a "moderate" 53 on the Global Assessment of Functioning ("GAF").[2] [AR 54.]

On August 10, 2018, Williams applied for disability insurance benefits and supplemental security income. [AR 37.] She was 51 then. [AR 362.] Her claims were initially denied on November 30, 2018, and again upon reconsideration on March 7, 2019. [AR 37.] Seeking reconsideration, she submitted a written request on May 3, 2019, and appeared for a hearing on January 15, 2020, where she testified. *Id*. However, the ALJ denied Williams's claims on February 19, 2020. [AR 148-59.] In 2020, she testified to being able to walk only a few blocks. [DE 18 at 14, AR 82.]

The Appeals Council then remanded Williams's case back to the ALJ. [AR 165-67.] In its remand order, the Appeals Council directed the ALJ to consider evidence from Dr. Nagubadi and Dr. Anekwe, as well as records that were not originally included as exhibits. *Id*. Based on concerns over COVID-19, Williams had another hearing before an ALJ via telephone on June 23, 2021. *Id*. During this telephonic hearing, Williams testified that she could not work due to her IBS, nausea, unpredictable bowel movements, PTSD, and inability to concentrate. [AR 44, 1194.] She also testified that she

---

[2] The GAF is a numeric scale (0 through 100) intended to rate the psychological, social, and occupational functioning of adults. *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32-33 (4th ed. 2000). Scores between 51 and 60 indicate moderate difficulty in functioning, while lower scores between 41 and 50 indicate serious difficulty in functioning. *Id*. at 34.

was living with her daughter. *Id*. Williams said she spent most of the day lying down, and could only stand for five minutes and not walk any blocks. [DE 18 at 13; AR 1195-96.] On July 23, 2021, the ALJ issued Williams another written decision denying benefits. [AR 37-58.]

In the written decision, the ALJ underwent the five-step sequential evaluation process codified in 20 C.F.R. § 404.1520. At step one, he determined that Williams had not engaged in substantial gainful activity since May 10, 2018, the alleged onset date of her disability. [AR 40.] Despite Williams's claims of suffering from severe impairments of degenerative disc disease, inflammatory bowel disease, obesity, anxiety, and depression, the ALJ concluded that Williams's impairments did not meet or equal an impairment listed in the SSA regulations. *Id*.

At the next step, the ALJ assessed Williams's residual functional capacity ("RFC"). [AR 43.] The RFC analysis determined that Williams could perform work at the light exertional level, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with several limitations as summarized below:

> she can occasionally climb ramps and stairs, as well as occasionally stoop, kneel, crouch, and crawl. She can never climb ladders, ropes, or scaffolds, never work at unprotected heights, and never balance, as that term is defined in the SCO. She is limited to simple work-related decisions, and simple, routine tasks with no assembly line work or strictly enforced daily production quotas. She can never interact with the general public. She can work in proximity to other co-workers, but only with brief, incidental interaction with other co-workers and with no tandem job tasks requiring cooperation with other co-workers to complete the task. Also, she could work where supervisors occasionally interact with her throughout the work day.

*Id*.

4

For now, I won't repeat the ALJ's extensive description of the medical evidence included in the written decision. [*See* AR 43-55.] However, I will summarize the ALJ's critical conclusions about the testimony of the relevant medical professionals.

The ALJ found Dr. Ann Lovko, the State agency psychological consultant, somewhat persuasive but discounted much of her opinion for failing to align with the overall medical record. [AR 52.] Dr. Lovko lacked access to the entire record at the time of her review, and did not personally examine Williams. [*Id*. at 52-53.] The ALJ pointed out that Williams testified she had anger issues and would lash out violently, and that she reported to psychological treatment providers that she heard voices and felt paranoid. [*Id*. at 53.] Finding evidence supporting greater limitations than what Dr. Lovko had opined, the ALJ rejected her opinion as he found Williams was "more limited than opined by this consultant." *Id*.

Dr. Montoya, the state medical consultant, opined that Williams had no severe impairments. [AR 53.] However, the ALJ also found this unconvincing because of Dr. Montoya's lack of access to the complete medical record and his failure to examine Williams personally. *Id*. Considering Williams's subjective reports of abdominal pain, uncontrolled diarrhea, and reports in her medical history of IBS and degenerative disc disease, the ALJ found that she did indeed suffer from severe impairments and "is more limited than opined by this consultant." *Id*.

The State Agency consultants Kenneth Neville, Ph.D., and Dr. Jerry Smartt Jr., found insufficient evidence to evaluate Williams's claims, so the ALJ found their opinions "neither valuable nor persuasive." *Id*.

5

Finally, the ALJ gave some weight to the medical opinions provided by Dr. Adolphus Anekwe, who is presently acting as Williams's treating physician. [AR 53-54.] According to Dr. Anekwe, who completed a Physical Residual Functional Capacity Questionnaire for Williams dated May 29, 2019, Williams's IBS disrupts her work performance. [AR 780-81.] She experiences frequent pain, requires multiple unscheduled breaks, and can sit or stand for less than 2 hours during an 8-hour workday. *Id.* Additionally, Dr. Anekwe estimated that Williams would be absent from work about three times a month due to her condition. [AR 782.] The ALJ found Dr. Anekwe's opinion was "somewhat persuasive":

> While Dr. Anekwe has been the claimant's primary care physician since approximately January 2019, this opinion is inconsistent with the overall record including Dr. Anekwe's own examinations of the claimant. Dr. Anekwe's treatment records consistently indicate the claimant demonstrates no edema, normal motor function, normal sensory function, good range of motion in all major joints, no tenderness, no focal deficits, no abdominal tenderness, distention or masses and normal bowel sounds (9F, 16F). Further, his records routinely reflected the claimant denied abdominal pain, nausea, vomiting, diarrhea, constipation, joint pain, and weakness (9F, 16F). While the lifting and carrying limitations are consistent with the overall record, the sit, stand and walk limitations are inconsistent with his own records as well as the overall medical evidence.

[*Id.* at 53.]

The ALJ also commented that Dr. Anekwe's treatment records contained various notes reflecting letters were given to her for workforce-unemployment, stating she could not return to work until further notice. [AR 54.]  The ALJ found these opinions "vague and did not prove any specific diagnosis or specific functional limitations";

moreover, determining whether Williams was "disabled" or "unable to work" should be an issue reserved for the Commissioner to decide. *Id.*

On October 23, 2019, Williams presented to Edgewater Behavioral Health Services for an intake assessment. [AR 882.] During her treatment there, Dr. Pamela Tran-Ong completed a Mental Impairment Questionnaire. [AR 929-31.] In her opinion, Williams had marked limitations in understanding, remembering, or applying information; interacting with others; concentration, persistence, or maintaining pace; and adapting or managing oneself. *Id.* She also opined Williams's attention and concentration would interfere in her workday and she would be absent from work more than three times a month. *Id.* The ALJ found: "[t]his physicians opining marked limitations in all four areas of the 'paragraph B' criteria are not supported by the overall record or this physician's own treatment notes." [AR at 54.] According to Williams, the ALJ addressed none of the multiple symptoms she reported and discussed with Dr. Tran-Ong. [DE 18 at 18.]

Williams also was treated by a doctor named Dr. Nagubadi. She reported diarrhea and abdominal pain to Dr. Nagubadi, and was admitted to the emergency room after meeting with her. [AR 576, 673.] During another visit, Dr. Nagubadi also observed diffuse discomfort in her gastrointestinal region and reduced right leg motor strength. [AR 475.] The ALJ noted in his opinion that throughout Williams's treatment with Dr. Nagubadi, she made claims like she was "unable to work" and should "stay off work," but he criticized these as "not intended to be permanent restrictions and are vague and do not provide specific functional limitations or time frame." [AR 55.]  Also,

like the decision of Dr. Anekwe, the ALJ criticized Dr. Nagubadi's opinion that

Williams was disabled as an issue reserved for the Commissioner to determine. *Id.*

Ultimately, the ALJ concluded that Williams's degenerative disc disease, IBS, and

obesity had been accommodated through postural and environmental work restrictions,

and her anxiety and depression was accommodated by the mental limitations. [AR 55.]

For these reasons, the ALJ ruled that Williams did not have an impairment or

combination of impairments that meets or medically equals the severity of one of the

listed impairments, and she had the RFC to continue working with the articulated

restrictions.

The Appeals Council denied review leaving the ALJ's decision as final. [AR 1-3.]

After losing her administrative appeals, Williams brought the matter here.

## Discussion

I'll start, as is customary, with the standards that govern my decision-making in

this appeal. In a Social Security disability appeal, my role as district court judge is

limited. My job is not to determine from scratch whether Williams is disabled. Instead, I

review the ALJ's written decision to determine whether the ALJ applied the correct

legal standards and whether the decision's factual determinations are supported by

substantial evidence. 42 U.S.C. § 405(g); *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir.

2012); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010). If substantial evidence supports

the ALJ's factual findings, they are conclusive. 42 U.S.C. § 405(g); *Shideler*, 688 F.3d at

310. The Supreme Court has said that "substantial evidence" means more than a

"scintilla" of evidence, but less than a preponderance of the evidence. *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971). "Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Given this modest standard, the review is light. But, of course, I cannot "simply rubber-stamp the Commissioner's decision without a critical review of the evidence*." Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Finally, my review is also guided by the principle that while "[t]he ALJ is not required to address every piece of evidence or testimony presented," the ALJ "must provide a 'logical bridge' between the evidence and the conclusions so that [I] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

Williams asserts that the ALJ made several errors in evaluating her subjective symptom reports and medical opinion evidence, determining her RFC, and filling an evidentiary deficit with his own lay opinion, resulting in an improper denial of benefits. Because these issues are determinative, I will focus on the ALJ's RFC assessment and evaluation of medical opinions.

1. **The ALJ Erred in RFC Evaluation and Application of Evidence Related to Williams's Physical Health.**

In analyzing whether Williams's RFC is proper, I will focus on the ALJ's analysis of her degenerative disc disease, IBS, and obesity.

Social Security Ruling 96-8p proscribes an ALJ's duties in assessing an RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).... The RFC assessment must include a discussion of why

9

> reported symptom-related functional limitations and restrictions can or
> cannot reasonably be accepted as consistent with the medical and other
> evidence.

SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("Narrative Discussion Requirements");

*see also Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) (holding in general RFC

assessments "must incorporate all of the claimant's limitations supported by the

medical record.").

Omitting an explanation about how the ALJ reached the conclusions contained in

the RFC is enough to warrant reversal of the ALJ's decision. *Briscoe ex rel. Taylor v.

Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (requiring ALJ to explain how he or she

arrived at RFC conclusions). In this regard, an ALJ may not point to evidence that

supports his conclusion while ignoring evidence to the contrary. *Denton v. Astrue*, 596

F.3d 419, 425 (7th Cir. 2010) (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009))

("An ALJ has the obligation to consider all relevant medical evidence and cannot

simply cherry-pick facts that support a finding of non-disability while ignoring

evidence that points to a disability finding."). Additionally, an ALJ cannot "play

doctor." *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) (noting that ALJs must "rely on

expert opinions instead of determining the significance of particular medical findings

themselves"); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2012); *Rohan v. Chater*, 98 F.3d

966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and

make their own independent medical findings.").

Williams claims the ALJ erred in assessing her RFC by failing to fully consider

Williams's IBS and also to have relied upon his own opinion to evaluate the effect of her

10

lumbar degenerative disease. [DE 18 at 10-12.] Williams also argues that the ALJ

violated SSR 96-8p by not accommodating medical limitations caused by her IBS,

obesity, and degenerative disc symptoms. *Id*. at 12-13.

In response, the Commissioner argues that Williams's RFC was correctly assessed by

the ALJ, who considered all of her impairments and explained how they factored into

her RFC of performing "light work." [DE 21 at 4.] The Commissioner also claims that

Williams provided no proof of any limitations caused by her IBS and that "[t]he simple

fact that Ms. Williams may have been diagnosed with certain conditions is not a

sufficient basis to second-guess the ALJ's conclusions about Ms. Williams' RFC." [DE 21

at 4.]

In this case, I believe the ALJ failed to build a logical bridge between his analysis

and ultimate conclusion about Williams's RFC. The biggest fault in the ALJ's logic is

how he lists all of Williams's ailments, but does not explain how Williams's physical

limitations caused by her IBS, degenerative disc disease, and obesity supported his

conclusion that she was still capable of light work. For example, Williams testified she

had diarrhea at least two to three times each week, she was in the bathroom "almost all

day" during these bouts, and was sometimes unable to make it to the bathroom in time.

[AR 1194-95.]  Williams complained about the same problems in her function reports.

[DE 367, 369.] Additionally, Williams reported diarrhea, nausea, and abdominal pain

during her medical visits over the years. [AR 480, 485, 576, 673, 695, 804, 850, 854, 856,

1124-26.] Her medical providers observed discomfort and tenderness in her abdominal

area upon examination. [AR 475, 576, 674.] While the ALJ vaguely stated that Williams's

inflammatory bowel syndrome, obesity, and degenerative disc disease were
"accommodated by the postural and environmental limitations" in the RFC assessment
[AR 55], he did not articulate *how* Ms. Williams's uncontrollable diarrhea would be
accommodated by her RFC. At a minimum, Williams would require workplace
accommodations such as more unscheduled breaks or workstations closer to a restroom
to maintain employment at the jobs identified by the ALJ; however, the ALJ failed to
include any such accommodations. The failure to include such accommodations
requires a remand. *See, e.g.*, *Clark v. Saul*, No. 1:20-CV-15-HAB, 2021 WL 164794, at *5
(N.D. Ind. Jan. 19, 2021) ("there are no accommodations in the RFC for the condition
[IBS], such as irregular restroom breaks. The ALJ also does not explain her rationale for
excluding the IBS limitations in the RFC. The ALJ failed to build the necessary logical
bridge between the record and the RFC, and remand is required."); *Jennifer B. v. Saul*,
No. 1:19-cv-347, 2020 WL 2520996, at *12 (N.D. Ind. May 18, 2020) (plaintiff contended
discussion of IBS symptoms "does not explain how or why the ALJ determined that *no*
limitations related to her IBS were necessary.").

      The ALJ's error was not harmless because excluding accommodations for
Williams's IBS, such as additional bathroom breaks or changing her workstation, does
not explain how she can maintain employment at jobs identified by the ALJ at step five.
Additionally, the VE testified that an individual absent more than once per month
would be considered unemployable. [AR 1204.] Dr. Anekwe opined that Williams's
potential absences of up to three times a month would exceed the VE's allowances for
absences.[AR 780-81.] Williams previously lost a job due to her IBS [AR 79] and, given

12

all the medical evidence in the record, it seems like the same absences would happen again. The ALJ disregarded Williams's IBS limitations thus warranting a reversal.

As for Williams's degenerative disc disease, the ALJ appeared to have based his decision on his own unqualified opinion about the CT scan ordered by Dr. Anekwe, while disregarding Dr. Anekwe's medical opinion that Williams could not work due to her back pain. Williams's CT scan shows multiple herniated or bulging discs on her spine at the L4-L5, L2-L3, and L3-L4 levels on March 12, 2021. [AR 932.] Without medical testimony on how to interpret the CT scan results, the ALJ cited the CT scan (AR 45), but still concluded that Williams could perform "light exertional level" work without explaining how he reached this result. This conclusion overlooks Dr. Anekwe's medical opinion (who reviewed the imaging of her spine) that because of Williams's low back pain, she could only stand for 45 minutes, sit for an hour at a time, and could only walk 2-3 city blocks without rest or experiencing severe pain. [AR 1168, 780-81.] It also ignores Williams's Function Report and testimony from the 2021 hearing that she spent most of her day lying down (AR 1196), became bedridden at times due to her back pain (AR 1199), could only walk half a block until experiencing back pain (AR 81-82), required a walker to walk distances (AR 372), and needed assistance showering because of sciatic pain in her right leg limiting her ability to stand (AR 366). The ALJ essentially "played doctor" by substituting his own lay opinion for actual medical testimony on the subject of Williams's degenerative disc disease.

This error was not harmless. The ALJ basically provided no rationale for determining that the objective medical evidence of Williams's lumbar spine reflected

13

she could tolerate the standing and walking requirements for light work. *See* 20 C.F.R. § 404.1567(b) (recognizing that light work generally "requires a good deal of walking or standing"). Using his unqualified opinion, the ALJ harmfully erred by determining Williams's RFC to handle "light work" despite the myriad of issues presented by her degenerative disc disease and documentation in the medical record that she simply could not meet the standing and walking requirements.

Next, the ALJ failed to accommodate Williams's limitations due to her IBS, obesity, and degenerative disc disease. The VE testified that someone who is off-task for more than 10 to 15 percent of the workday would be considered unemployable. [AR 1204.] Dr. Anekwe found that Williams can sit, stand, and walk for less than two hours during an eight-hour workday and may be absent up to three times monthly. [AR 780-81.] And the medical record contains plenty of information documenting Williams's disc disease. [*See* DE 18 at 13-14.] However, the ALJ's decision only vaguely mentioned that these conditions were "accommodated through postural and environmental limitations" without providing any explanation. [AR 55.] Yet aside from listing her impairments in a laundry-list-like fashion over multiple pages in his written decision, the ALJ failed to address or evaluate how these limitations supposedly would not affect her ability to do light work, including her ability to stand at times. [AR 43-55.] The ALJ provided no accommodations for her degenerative disc disease, such as a sitting workstation or giving her more desk work.

Furthermore, although the ALJ mentioned Williams's obesity, noting that she has a level III BMI in the range of 43-49, he did not evaluate how it could impact her ability to

14

work, especially combined with her other impairments of IBS and degenerative disc disease. Williams's high obesity level, linked with her degenerative disc disease and IBS, may exacerbate other medical conditions over time and collectively create more limitations for her. This is because her body weight may put more stress on her lumbar spine, which could further limit her ability to walk, stand, or sit for prolonged periods as required by the definition of "light work." This court and others have reversed for less. *See Kennedy v. Saul*, 2:19-CV-00011-PPS, 2019 WL 6649855, at *2-*4 (N.D. Ind. Dec. 6, 2019) (reversing and remanding to ALJ to reconsider the effect of the claimant's 31-33.9 BMI on her other medical impairments); *see also John P. v. Saul*, No. 2:19-cv-00004, 2019 WL 4072118, at *8 (N.D. Ind. Aug. 28, 2019) (remanding where ALJ disregarded obesity in combination with other impairments properly); *Quintana v. Colvin*, No. 15 C 6417, 2016 WL 3752982, at *4 (N.D. Ill. July 14, 2016) ("remand is necessary to consider the cumulative effects of Plaintiff's [Level I] obesity on his underlying impairments.").

In sum, the ALJ improperly assessed Williams's RFC by failing to build a logical bridge and filled an evidentiary deficit with his unqualified lay opinion. Furthermore, the ALJ provided no accommodations for Williams's limitations caused by her IBS, degenerative disc disease, and obesity. Remand is warranted on this basis alone.

## 2. The ALJ Erred in Assessing Opinion Evidence of Acting Physician Dr. Anekwe and Dr. Tran-Ong Without Complying with 20 C.F.R. § 404.1520c.

Section 404.1520c(c) requires ALJs to explain why particular medical opinions are consistent with the record as a whole. 20 C.F.R. § 404.1520c(b)(2), (c)(1); *see also Bakke v. Kijakazi*, 62 F.4th 1061, 1067 (7th Cir. 2023); *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir.

2018) (noting the importance of consistency with record evidence under the previous rule, the "treating-physician rule," which has been replaced through revisions to § 404.1520c). As part of this process, "[a]n ALJ has the obligation to consider all relevant medical evidence" and not to selectively cite only the evidence that supports his conclusion. *Denton*, 596 F.3d at 425 (per curiam).

Williams argues that the ALJ violated 20 C.F.R. § 404.1520c(b)(2) by improperly discounting Dr. Anekwe's and Dr. Tran-Ong's medical opinions. Williams alleges that the ALJ selectively picked only certain evidence from Dr. Anekwe's medical record to support the denial of social security benefits and disregarded Dr. Tran-Ong's medical testimony, specifically the GAF scores and Williams's symptoms of mood swings and depression.

In response, the Commissioner asserts the ALJ correctly evaluated Williams's medical record as a whole. The Commissioner argues that the ALJ's reasoning was based on the physicians' testimony, which consisted of checkboxes that revealed conclusory opinions about Williams's RFC. The Commissioner believes that the ALJ's judgment was sound and that the questionnaires did not explain their findings.

Here, I believe the ALJ violated 20 C.F.R. § 404.1520c(b)(2) by selectively citing the physicians' medical testimony while ignoring other critical information. By not considering the complete medical record, the ALJ failed to make a just and precise decision. Here are some examples.

First, Dr. Anekwe's medical testimony was selectively cited by the ALJ to support his conclusion. The ALJ stated that on multiple appointments with Williams from 2019

16

to 2020, Dr. Anekwe reported that she lacked edema, tenderness, and focal deficits. [AR 48-49.] The ALJ based his denial on these so-called "contradictory" testimonies while disregarding objective medical imaging of Williams's spine reviewed by Dr. Anekwe. [AR 53-54, 932, 1168.] Discounting evidence of Dr. Anekwe's IBS opinion, the ALJ stated that Williams routinely denied having nausea, diarrhea, vomiting, and constipation. [AR 55.] However, the ALJ mischaracterized this evidence by ignoring the reality of how a chronic disease such as IBS can affect a person. Dr. Anekwe often documented Williams's symptoms of sciatica, which caused pain in her right leg, as well as abdominal discomfort and indigestion. [E.g., 791, 798, 814, 825, 1052, 1063, 1112, 1120, 1126, 1130, 1143, 1148, 1155.] Additionally, most of Williams's contradictory testimony is from before her IBS symptoms escalated in 2019 and 2020. [AR 48-49.] As mentioned above in her testimony of 2021, she explained that her frequent and unpredictable diarrhea prevents her from leaving her home.[AR 79-80.] Lastly, IBS is a chronic condition that can have unpredictable symptoms. "A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days." *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008). Williams takes medicine to combat her IBS, which causes side effects such as intense fogginess and drowsiness. Because of the chronic nature of her illness, Williams testified there are days when she will be fine and others when she experiences excruciating pain and must be near a restroom. [*See* AR 79-85.] Williams testified to having only three "good" days a week. [AR 85.] Ignoring the medical record as a whole

and selectively choosing evidence from only the "good days" violates 20 C.F.R. §

404.1520c(b)(2).

Secondly, I will analyze the evaluation of Dr. Tran-Ong's testimony. Dr. Tran-Ong's

testimony was not fully considered by the ALJ, which focused only on Dr. Tran-Ong

opining Williams's GAF score was 50, despite treatment records from Dr. Tran-Ong

finding Williams scored 53. [AR 54-55.] A "serious" GAF score (41-50) reflects serious

symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or

any serious impairment in social, occupational, or school functioning (e.g., no friends,

unable to keep a job). *See* American Psychiatric Association, Diagnostic and Statistical

Manual of Mental Disorders 32-33 (4th ed. 2000). A "moderate" GAF score still involves

social, occupational, and school functioning difficulties. *Id.* The ALJ discredited Dr.

Tran-Ong's opinion based on a three-point discrepancy between the Mental Impairment

Questionnaire (AR 929) and treatment notes (AR 886), but did not explain any further.

[AR 54.] Williams's mental health issues recorded by Dr. Tran-Ong included limited

memory, cooperation, interaction, job performance, concentration, manic episodes,

difficulty breathing, insomnia, severe anger, and paranoia. [AR 929.] The issue is not the

discrepancy in the low GAF scores, but the ALJ's general tendency to discount or ignore

evidence favorable to Williams's claim, including multiple mental health issues tied

with the GAF score that suggest a far lower level of functioning than that captured by

the ALJ's analysis. *See Yurt*, 758 F.3d at 860 (7th Cir. 2014)(citing *Bates v. Colvin*, 736 F.3d

1093, 1100 (7th Cir.2013) (low GAF score alone is insufficient to overturn ALJ's finding

of no disability but GAF scores in context revealed ALJ's deficient consideration of the entirety of claimant's evidence)).

Lastly, the ALJ's judgment that the medical questionnaires failed to justify the doctors' findings is flawed. Although a check-box form might be weak evidence by itself, "the form takes on greater significance when it is supported by medical records." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (citing *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir.1993). Both questionnaires accompany extensive medical records detailing Williams's mental health, IBS, and degenerative disc disease symptoms. Dr. Anekwe treated Williams since January 2019. [AR 49.] During these appointments, Dr. Anekwe's notes often documented Williams's symptoms of sciatica, which caused pain in her right leg, as well as abdominal discomfort and indigestion. [E.g., 791, 798, 814, 825, 1052, 1063, 1112, 1120, 1126, 1130, 1143, 1148, 1155.] Dr. Tran-Ong also began treatment in 2019 and observed Williams's symptoms of anxiety, depressed mood, sleep disturbance, recurrent panic attacks, hallucinations, and psychomotor retardation. [AR 882, 929.] Despite extensive evidence in the record of Williams's suffering from paranoia and unpredictable diarrhea, the ALJ provided no reason why the questionnaires were considered unpersuasive when also tied to the medical records. This is also a reason to remand this case.

*       *       *

Because I am remanding this case for the reasons stated above, I need not discuss the remaining two issues raised by Williams – she can raise those issues directly with the ALJ on remand.

**Conclusion**

For the reasons set forth above, the Commissioner of Social Security's final decision is REVERSED and this case is REMANDED to the Social Security Administration for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED:  August 30, 2023.

 /s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT